UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MINERVA TORRES,

    Plaintiff,

v.                                             Case No. 8:21-cv-177-AAS

KILOLO KIJAKAZI,
**Acting Commissioner of
Social Security Administration,**[1]

    Defendant.
_____/

## ORDER

Plaintiff Minerva Torres requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for Social Security Disability benefits under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' joint memorandum, the Commissioner's decision is **AFFIRMED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY

Ms. Torres applied for Disability Insurance Benefits (DIB) on April 21, 2018, alleging a disability onset date of February 26, 2017. (Tr. 95, 232–33). Ms. Torres' claim was denied initially and after reconsideration. (Tr. 83–94, 96–115). A hearing was held before the ALJ on June 10, 2020. (Tr. 38–51). On August 28, 2020, the ALJ found Ms. Torres not disabled. (Tr. 20–29).

The Appeals Council denied Ms. Torres' request for review on December 18, 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 7–10). Ms. Torres now requests judicial review of the Commissioner's final decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Background

Ms. Torres was fifty years old at the time of her alleged disability onset date. (Tr. 260, 267). Ms. Torres has a high school education and past relevant work as an office clerk. (Tr. 260).

### B.   Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

activity,[3] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[4] *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

The ALJ here determined Ms. Torres met the insured status requirements of the Social Security Act through March 31, 2022. (Tr. 22). The ALJ found Ms. Torres did not engage in substantial gainful activity since

---

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572(a).

[4] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. § 404.1545(a)(1).

3

February 26, 2017, the alleged onset date. (*Id.*). The ALJ found Ms. Torres had these severe impairments: fibromyalgia, anxiety disorder, and obsessive compulsive disorder. (*Id.*). However, the ALJ found Ms. Torres' impairment or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (Tr. 23).

The ALJ found Ms. Torres could perform light work as defined in 20 C.F.R. § 404.1567(b),[5] except:

> [Ms. Torres] can lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday. [Ms. Torres] may occasionally climb ladders/ropes/scaffolds, and frequently climb ramps/stairs, stoop, kneel, crouch, and crawl. [Ms. Torres] must avoid concentrated exposure to extreme cold, extreme heat, vibrations, noise, and hazards. [Ms. Torres] is able to understand, carry out, and remember simple, routine tasks; involving only simple, work-related decisions with the ability to adapt to routine work place changes. [Ms. Torres] could tolerate frequent interaction with the general public.

(Tr. 24).

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Based on Ms. Torres' testimony at the administrative hearing, Ms. Torres' RFC, and the vocational expert's testimony, the ALJ determined Ms. Torres could not perform her past relevant work. (Tr. 27). The ALJ then determined Ms. Torres could perform other jobs that exist in significant numbers in the national economy, specifically as a hotel housekeeper, price marker, and a routing clerk. (Tr. 28). Thus, the ALJ found Ms. Torres not disabled from February 26, 2017, through the date of the decision. (Tr. 29).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not

5

make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Ms. Torres raises two issues on appeal: (1) whether the ALJ properly evaluated her subjective complaints of pain; and (2) whether substantial evidence supports the ALJ's RFC assessment regarding her shoulder pain. (Doc. 24, pp. 4–8, 14–15).

#### 1. Whether the ALJ properly evaluated Ms. Torres' subjective complaints of pain.

First, Ms. Torres contends the ALJ did not properly evaluate her subjective complaints. (Doc. 24, pp. 4–8). Specifically, Ms. Torres claims the ALJ failed to properly consider her fibromyalgia, and that, despite finding that Ms. Torres had the severe impairment of fibromyalgia, the ALJ "rejected the diagnosis of fibromyalgia in another part of the decision," when the ALJ noted that Ms. Torres' examination revealed inconsistencies with such a diagnosis. (*Id.*). In response, the Commissioner argues Ms. Torres' argument is "pure

speculation" and the ALJ properly considered Ms. Torres' treatment and medication, examination findings, reported symptoms, and prior administrative medical findings when addressing her subjective statements. (Doc. 24, pp. 8–14).

> [F]ibromyalgia [is] a chronic disorder "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 77 Fed. Reg. 43,640, 43,641 (July 25, 2012).[6] The symptoms of fibromyalgia "can wax and wane so that a person may have bad days and good days." *Id.* at 43,644 (quotation marks omitted). For this reason, "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." *Id.* at 43,642. "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects" of the fibromyalgia symptoms, the ALJ will "consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." *Id.* at 43,643.

*Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 142–43 (11th Cir. 2019).

---

[6] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). "Even though the rulings are not binding on [federal courts], [they are] nonetheless accord[ed] great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)). Courts also "require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (quotations omitted).

Even before the issuance of SSR 12-2p, the Eleventh Circuit recognized that fibromyalgia's "hallmark is ... a lack of objective evidence," as it "often lacks medical or laboratory signs and is generally diagnosed mostly on a [sic] individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Stewart v. Apfel*, No. 99-6132, 245 F.3d 793 (11th Cir. Dec. 20, 2000)); *accord Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63 (11th Cir. 2010) ("We, along with several other courts, have recognized that fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'").

SSR 12-2p clarifies that a claimant's subjective statements about the effects of fibromyalgia are evaluated under the same standard as other subjective complaints of disabling symptoms,[7] which states:

---

[7] *See* SSR 12-2p, 2012 WL 3104869, at *5 & n.17 (in evaluating a person's statements about his or her symptoms and functional limitations from fibromyalgia, the Commissioner follows "the two-step process set forth" in 20 C.F.R § 404.1529(b)-(c), and SSR 96-7p); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) ("Social Security Ruling 12-2p provides guidance on how the SSA develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims. *See generally* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). It sets out a two-step process for evaluating symptoms, which involves (1) determining whether medical signs and findings show that the person has a medically determinable impairment, and (2) once a medically determinable impairment is established, evaluating the 'intensity and persistence of the person's pain or any other symptoms' and determining 'the extent to which the symptoms limit the person's capacity for work.' *Id.* Then, to decide whether a person is disabled based on a medically determinable impairment of fibromyalgia, the SSA

> If the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors. *Id.* § 404.1529(c)(1)-(2). The ALJ may consider other factors, such as: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of the claimant's medication; (5) any treatment other than medication; (6) any measures the claimant used to relieve her pain or symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to her pain or symptoms. *Id.* § 404.1529(c)(3). The ALJ then will examine the claimant's statements regarding her symptoms in relation to all other evidence and consider whether there are any inconsistencies or conflicts between those statements and the record. *Id.* § 404.1529(c)(4).

*Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831–32 (11th Cir. 2013).

While objective evidence is not required to substantiate a claimant's subjective claims as to fibromyalgia, the lack of such evidence is still a valid consideration under both SSR 12-2p and the symptom-evaluation regulations, 20 C.F.R § 404.1529(b)–(c). It is not reversible error for an ALJ to note a lack of objective evidence, so long as the decision does not indicate the ALJ gave undue weight to this lack of evidence and that the ALJ considered both the medical and non-medical evidence in the record in evaluating the claimant's

---

considers the regular five-step sequential evaluation process used for any adult claim for disability benefits. *Id.*").

statements. *See Lorenzi v. Comm'r, Soc. Sec. Admin.*, 550 F. App'x 855, 857 (11th Cir. 2013) ("Although we have indicated that the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' . . ., the ALJ did not rely on the absence of objective evidence of [the claimant's] hand pain. Rather, the ALJ relied on the inconsistencies between [the claimant's] descriptions of her daily activities, the objective medical evidence, and her claims of pain. The ALJ thus articulated explicit and adequate reasons for choosing to discredit [the claimant's] testimony").

While Ms. Torres concedes that the ALJ has the discretion to determine whether a claimant's alleged symptoms are consistent with the record, Ms. Torres argues that the ALJ here "does not believe" that Ms. Torres has fibromyalgia, and therefore cannot adequately evaluate Ms. Torres' subjective complaints of pain. (Doc. 24, pp. 7). The undersigned disagrees. The ALJ gave reasons for determining that Ms. Torres' subjective complaints about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25–27). The ALJ explained:

> After careful consideration of the evidence, [the undersigned] find[s] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not fully supported by objective[8] evidence. Although the claimant reported that she is unable to work, her course of treatment has been conservative and routine. The claimant alleged being severely limited by fibromyalgia but the record shows only mild clinical findings often with no signs of muscle or joint tenderness. Indeed, upon examination, the claimant was found to have only one positive trigger point which is inconsistent with a diagnosis of fibromyalgia. The record shows that the claimant required routine, non-emergency care for her physical impairments with the exception of her shoulder surgery. . . . Based on the overall medical evidence of record, I limited the claimant to a range of simple, unskilled light work. The record does not support a more restrictive functional capacity.

(Tr. 26–27).

The ALJ reviewed the medical evidence, noting that "the claimant is not nearly as impaired as she alleged." (Tr. 25). The ALJ reviewed Ms. Torres' treatment notes just prior to her alleged onset date, from December 2016, and underscored that Ms. Torres reported that she was independent without difficulty and able to work full time. (Tr. 25, 386). Notes from the same physical therapy sessions state that "[o]verall rehabilitation potential is good." (Tr. 388). Rheumatology treatment records from November 2016 through March 2017 note that Ms. Torres diagnosed herself with fibromyalgia in 2013 and has

---

[8] Although the ALJ explicitly stated that Ms. Torres' symptoms were not fully supported by the *objective* evidence, the ALJ went on to discuss the other evidence of record, including Ms. Torres' reported complaints during treatment and her conservative treatment history.

11

"multiple non-defining features of fibromyalgia syndrome including sleep disorder, fatigue, headaches, myofascial pain syndrome, short term memory problems, mental fog, et cetera." (Tr. 420–442). Rheumatology records further note that Ms. Torres "gets around the room without use of adaptive devices" but exhibited "typical fibromyalgia trigger points throughout." (Tr. 421, 423). Ms. Torres' treating rheumatologist counseled Ms. Torres on an incremental exercise routine, providing that Ms. Torres' "goal should be 30 to 40 mins. 4 or 5 days weekly" of aerobic exercise, including walking, swimming, or exercise bike. (Tr. 25, 424). On examination, Ms. Torres displayed joint tenderness in one or two of twenty-eight joints. (Tr. 25, 428, 433). By March 2017, Ms. Torres' rheumatologist noted that Ms. Torres "is doing better with her fibromyalgia symptoms," but that Ms. Torres "decided to quit her job" and experienced a significant improvement in symptoms. (Tr. 25, 438). Beyond tenderness on palpation of the right index finger and cervical spine pain at extreme limits of range of motion, Ms. Torres' musculoskeletal system review was otherwise unremarkable. (Tr. 25, 439–40).

Beyond treatment for a urinary tract infection in December 2017, Ms. Torres did not seek additional treatment for approximately eleven months, when she reported abdominal pain with nausea. (Tr. 25, 471, 521–22). Following an esophagogastroduodenoscopy, Ms. Torres was diagnosed with GERD and dyspepsia, and prescribed anti-reflux medication. (Tr. 25, 531–37).

After experiencing a return of joint pain, Ms. Torres underwent imaging of her lumbar spine, which revealed mild levoconvex curvature of the lumbar spine, minimal endplate spurring at multiple levels, mild facet hypertrophy with no fracture. (Tr. 25, 647–48). In August 2018, Ms. Torres returned to treatment with complaints of muscle aches. (Tr. 748). On examination, Ms. Torres showed normal curvature of spine, a negative straight leg test, and normal extremities. (Tr. 25, 749).

In March 2019, Ms. Torres returned to treatment to establish care with a new provider. (Tr. 789). Treatment records show normal range of motion, no edema or tenderness, and note that Ms. Torres' fibromyalgia is being managed. (Tr. 789–92). At a May 2019 follow up, Ms. Torres' musculoskeletal review notes arthralgias and myalgias, but negative for back and neck pain, with no edema or tenderness, and normal range of motion. (Tr. 796–97). In March 2020, Ms. Torres reported her pain as a 2/10, with her worst discomfort level at a 6/10. (Tr. 846–47). Ms. Torres' reported pain, however, appears to be related to her shoulder surgery recovery. (*Id.*). Nevertheless, treatment notes from April 2020 suggest that Ms. Torres still suffered from "fibromyalgia pain," though Ms. Torres reported that she was "trying [the] best she can to stay active and busy." (Tr. 867–69).

The ALJ also considered Ms. Torres' treatment, noting that "her course of treatment has been conservative and routine," and that Ms. Torres "required

13

routine, non-emergency care for her physical impairments with the exception of shoulder surgery to repair a rotator cuff tear." (Tr. 26–27). The Regulations provide an ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication" when evaluating a claimant's testimony about her symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also* SSR 16-3p. The record here shows Ms. Torres was generally treated with medication and did not require more aggressive treatment, such as emergency room visits for fibromyalgia pain or trigger point injections. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (comparing "more aggressive" fibromyalgia treatments to more conservative, routine methods).

Ms. Torres' argument that the ALJ did not believe that Ms. Torres had fibromyalgia is misplaced. The ALJ acknowledged Ms. Torres' fibromyalgia diagnosis, made a finding that it constituted a severe impairment, and repeatedly noted Ms. Torres' fibromyalgia symptoms and treatment course throughout his decision. (*See* Tr. 22–27). After properly comparing the evidence of mild symptoms and conservative treatment against Ms. Torres' subjective complaints about the intensity, persistence, and limiting effects of her symptoms, the ALJ concluded that Ms. Torres' subjective complaints were not entirely consistent with the medical evidence and other evidence in the record. (*See* Tr. 25–27). The ALJ did not discredit Ms. Torres' diagnosis.

14

While Ms. Torres had a history of medical treatment, the evidence of record did not fully support Ms. Torres' allegations of disability. *See* SSR 12-2p, 2012 WL 3104869, at *5 ("If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including . . . medications or other treatments the person uses, or has used, to alleviate symptoms . . . "). The ALJ's decision adequately indicates he properly evaluated Ms. Torres' subjective complaints, including symptoms related to her fibromyalgia and Ms. Torres' treatment history, in reaching his disability determination. (*See* Tr. 25–27).

Thus, the record provides substantial evidence to support the ALJ's finding that Ms. Torres' subjective statements about her symptoms and limitations were inconsistent with the medical and other evidence. Accordingly, the ALJ did not err.

### 2. Whether substantial evidence supports the ALJ's RFC assessment regarding Ms. Torres' shoulder pain.

Ms. Torres argues that the ALJ's formulated RFC should have included specific limitations related to Ms. Torres' shoulder injury, surgery, and recovery. (Doc. 24, pp. 14–15). The Commissioner responds that the ALJ properly considered Ms. Torres' shoulder pain, and that Ms. Torres failed to show that her shoulder pain was a severe impairment for twelve months. (*Id.*

at 17). The Commissioner further argues that Ms. Torres failed to show that any limitations caused by her shoulder impairments exceed the RFC or are not otherwise accounted for in the RFC. (*Id.*).

A claimant's RFC is the most work a claimant can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec. Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor."). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Here, to support the RFC for light work, the ALJ relied on Ms. Torres' testimony and the objective medical record, including medical imaging, Ms. Torres' treatment notes, treatment history, and the opinions of agency medical consultants. (Tr. 25–27). As discussed above, the ALJ also considered Ms. Torres' subjective complaints of pain in assessing the RFC. (*Id.*).

In assessing Ms. Torres' medical record, the ALJ chronologically reviewed Ms. Torres' treatment history, beginning in 2016. (Tr. 25, 386). While the ALJ's medical record review focused primarily on Ms. Torres' symptoms and associated treatment related to her fibromyalgia, the ALJ also discussed Ms. Torres' treatment of a urinary tract infection (Tr. 25, 471, 521–22), complaints of abdominal pain and a GERD diagnosis (Tr. 25, 531–37, 652), shoulder pain and subsequent surgery associated with a rotator cuff injury (Tr. 26, 678–696, 845–48, 850, 852, 854, 856–57), as well as mental impairments including anxiety and memory loss (Tr. 26, 670–77). Related to Ms. Torres' shoulder injury, the ALJ cites Ms. Torres' September 2019 rotator cuff surgery to repair a partial thickness tear (Tr. 26, 678–696, 845–48, 850, 852, 854, 856–57), noting that Ms. Torres "reported that following physical therapy her

17

shoulder pain was minimal." (Tr. 26). The ALJ continued to discuss Ms. Torres' shoulder issues, citing follow up examinations and physical therapy treatment notes from March 2020 where Ms. Torres had improvements in both range of motion and strength (Tr. 26, 848).

Despite Ms. Torres' contention that the ALJ was required to include a limitation related to Ms. Torres' shoulder in the RFC, the record, including Ms. Torres' treatment notes, do not support Ms. Torres' alleged severity. Moreover, substantial evidence, as evidenced above, supports the ALJ's finding that Ms. Torres can perform light work.

While Ms. Torres argues that her shoulder pain caused a severe impairment for a period of at least twelve months, Ms. Torres has not shown evidence to support her contention. To be entitled to benefits, a claimant must be disabled, meaning she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Further, the claimant bears the burden of providing medical evidence showing she is disabled and the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). If the claimant demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice,"

18

remand is warranted. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice") (internal quotation and citation omitted).

Here, Ms. Torres has failed to demonstrate that her shoulder pain was a severe impairment for at least twelve months. While Ms. Torres may have experienced shoulder pain for a period longer than twelve months, Ms. Torres has not demonstrated that such pain constituted a severe impairment and rendered her unable to engage in any substantial gainful activity for that entire period. Prior to formulating a claimant's RFC, the ALJ considers the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. § 404.1521. While an ALJ need not determine that every impairment is severe, an ALJ must consider all the record evidence, including evidence of non-severe impairments, in making the RFC determination. *Phillips*, 357 F.3d at 1238.

Here, the ALJ determined that Ms. Torres' shoulder impairments, considered singly and in combination, did not cause more than minimal

19

limitation in Ms. Torres' ability to perform basic mental work activities. (Tr. 22). In making this determination, the ALJ reviewed Ms. Torres' ability to perform basic work activities. (*Id*). Despite finding that Ms. Torres' shoulder impairments were non-severe, the ALJ reviewed Ms. Torres' medical history related to shoulder pain, treatment, surgery, and recovery, in the ALJ's RFC formulation. (Tr. 25–27). Based on the ALJ's acknowledgment and review of Ms. Torres' shoulder impairment history and medical record, substantial evidence supports the ALJ's decision to not include explicit limitations in the RFC related to Ms. Torres' shoulder impairments.

For all these reasons, the court finds no error in the ALJ's decision and finds that it is supported by substantial evidence.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on April 19, 2022.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge